## MORGAN CONST. CO. v. DONNER STEEL CO., Inc.

(Circuit Court of Appeals, Second Circuit.   November 16, 1921.)

### No. 36.

1. **Patents ⊕⟹328—863,841, claims 1-4, 7, for cooling bed for steel bars, held not infringed.**

   The George patent, 863,841, claims 1-4, 7, for cooling beds for steel bars, the patentable element in which was the relation between the supporting and lifting bars, whereby the steel rods were moved forward step by step in notches registering with each other, *held* not infringed by defendant's apparatus, on which the steel bars rolled by gravity into the notches of the supporting bars.

2. **Patents ⊕⟹26(2)—Combination of old elements must cause new effect.**

   A combination of elements, all of which are old, is not patentable, unless there is found in the co-operation of the elements some novel and useful effect, resulting from the combination, and not found in the prior art.

Appeal from the District Court of the United States for the Western District of New York.

Suit by the Morgan Construction Company against the Donner Steel Company, Inc., for infringement of a patent.   Decree for plaintiff (269 Fed. 389), and defendant appeals.   Reversed and remanded, with directions to dismiss the bill.

Suit is upon patent to George, No. 863,841, dated August 20, 1907, and assigned before issue to plaintiff, a corporation of which Mr. George is, and was long before the date of patent, an important employee, if not officer.   The invention covers a "conveyer for metal rods," and is what is known in the art of rolling steel shapes as a "cooling bed," a structure which receives the

---

red-hot bars or shapes from the finishing rolls, and transports them as they lie on the bed sidewise, usually to the shearing mechanism. The red-hot steel forms are expected to cool during this transport.

Cooling beds are and have been of several types, and plaintiff is the best known maker of the same; approximately three-fourths of all the merchant bars made in the United States are handled on beds of plaintiff's construction, and largely under prior patents familiarly known to Mr. George. The patent in suit, however, has practically lain unused; only one bed has ever been made thereunder, and that one does not conform strictly to the patent specification. So far as influence on business is concerned, the patent may fairly be called "paper."

Defendant is a manufacturer of steel; it desired a cooling bed for a particular mill making (or capable of making) a particular product. Plaintiff was consulted as to furnishing same, and the patentee was sent to examine defendant's plant, and confer. He did not suggest the use or application of the patent in suit; the suggestions he did make were not thought useful, and defendant's superintending engineer in ignorance of the existence of said patent, designed and built the cooling bed now said to infringe. By specification, the invention "relates to that class of conveyers which comprise supporting bars for supporting the metal rods during a forward step by step movement, and a series of lifting and carrying bars by which the rods are moved."

This means that "shuffle bar" beds were already widely used. They exhibit a series of rigid flat bars supporting the hot rods lying across them, combined with interplaced parallel, but movable flat bars, also capable of supporting the hot rods, and actuated by shafts to which are given a circular or elliptical motion, resulting in the movable bars rising, lifting the hot rods from the rigid bars, moving forward while sinking again to the plane of the rigid bars, and so at any precalculated rate advancing the hot rods along the bed, by a step by step actuation.

The specification then points out that in the shuffle bar beds "the upper surface of both lifting and supporting bars are straight and in horizontal planes," whereas the patentee makes the upper surface of his supporting bars "of a serrate form," and the same surface of his lifting bars of "wave shape," to the end that the angular form of the notches on the supporting bars, and their arrangement in parallel sets across the conveyer, with their corresponding sides in the same plane, serve the purpose of correcting any bends or distortions in the rods themselves, "as the weight of the heated rods in their plastic state," when supported by the symmetrical angular sides of the notches or serrations, "tends to straighten the rods" until by cooling they become rigid. This desirable function of straightening the rods while hot, by means of aligned notches, was also confessedly known and practiced, and was accomplished by the prior art "gravity escapement" and "universal" beds (Edwards patents, 701,024 and 793,926), both manufactured by plaintiff.

The patentable novelty asserted by the specification was to so co-ordinate the waves, serrations, depressions, or notches of the two sets of bars that, "when the lifting bars have passed through one-quarter of their circular movement," the "depressions" in said lifting bars "will correspond with the notches in the supporting bars"; consequently, whatever is in the said notches will be lifted out of the same, resting in the lifting bar "depressions," which lifting bars, continuing to rise and advance in obedience to the circular actuation of their shafts, will at "three-quarter revolution" have brought their "depressions" into register with the next set of rigid, or supporting bar "notches," and then, continuing to sink in the last quarter-revolution, leave "deposited in the notches of the supporting bars" whatever was thus carried over a serration separating two notches. Thus is accomplished the step by step advance across the serrated cooling bed of the originally red-hot bar or shape.

The claims relied on are 1, 2, 3, 4, and 7. Of these the first is most general, and the seventh was inserted after some conflict in the office, and may be taken as a definition of invention after discussion. They are as follows:

"1. In a conveyer for metal rods, the combination of supporting bars having serrated upper edges, lifting bars normally entirely below said serrated upper

edges of said supporting bars, and means for moving said lifting bars in a circle whereby the upper surface of said lifting bars passes entirely above the serrated upper edges of the supporting bars."

"7. In a conveyer for metal rods, the combination of fixed supporting bars provided with a series of notches arranged in sets transversely across the conveyer, with the sides of said notches in each set in the same plane, a series of movable notched bars, and means for actuating said movable bars to lift a metal rod from one set of notches in said fixed bars and deposit it in another set of notches."

Defendant's alleged infringing device has supporting and lifting bars, and both are notched; to the lifting bars a circular actuation is given as in the old shuffle bar bed, but the two sets of notches or serrations, are intentionally not so correlated or co-ordinated that they ever register as to their notch angles. The defendant's lifting bars never deposit what they lift in the next notch angle of the supporting bars; on the contrary, they are so designed as to leave their load at such a point on the slope of the notch wall that it rolls or slides into the notch angle. This tumbling movement is intentional, and for defendant's purpose and product is thought advantageous.

The trial court held the patent valid and infringed, and defendant appeals.

Frederick W. Winter and Jo. Baily Brown, both of Pittsburgh, Pa., for appellant.

Geo. H. Kennedy, Jr., of Worcester, Mass., for appellee.

Before ROGERS, HOUGH, and MAYER, Circuit Judges.

HOUGH, Circuit Judge (after stating the facts as above). If this patent covers any combination or co-ordination of serrated rigid supporting bars, with serrated lifting bars, capable of elevating the thing lifted over a saw tooth in the rigid bars, and leaving that thing at any point or place in the next depression between two teeth, the decision below was right.

We are not able to accord to this invention such wide scope. Cooling beds generically were old, the shuffle bar mechanism was well known, and the lifting, advancing, and then sinking function of a horizontal surface moved by a circularly actuated shaft had been used in many arts. It is, we think, admitted that merely making depressions, troughs, serrations, or notches in the previously flat bars of the prior art, for the purpose of assisting straightening of hot forms, would not be invention; and, if not admitted, it is true, in the light of Kellogg, No. 265,265, a patent of 1882, showing a cooling bed of troughs separated by elevations which (in vertical section) are segments of a circle, with means for lifting a round form to the top of the elevation, after which it rolls down into the next trough. This was a straightening device, and the same result is the prominent merit of plaintiff's escapement and universal beds, which likewise utilize gravity by inclining the bed.

There is not a new element in plaintiff's combination; hence, to reach validity, there must be found in the co-operation of old elements some novel and useful effect resulting from the combination, and not found in the prior art. Office, etc., Co. v. Fenton, etc., Co., 174 U. S. 492, 19 Sup. Ct. 641, 43 L. Ed. 1058. It is the inventive thought that vitalizes and indeed interprets a patent; in this invention we think that thought is the entire abandonment of gravity as a means of assisting the hot steel form on its way. As the patentee said in testifying:

"This patent of mine covers a construction which straightens the bars and keeps them straight during the cooling process, and *also keeps them separated when desired.*"

They are kept separate by a lifting process, which ends in a "deposit," without tumbling or rolling, and, by thus "depositing" what is lifted, a plurality of bars or forms can be advanced step by step across the bed, without jostling against each other. This last is the one use to which the patented device has been put.

Of the claims quoted, the first will undoubtedly, if read literally, cover defendant's device; but this is not final. It remains to inquire whether the alleged infringement displays "substantial identity" with the thing invented. Westinghouse v. Boyden, 170 U. S. 537, 18 Sup. Ct. 707, 42 L. Ed. 1136; Geoghegan v. Ernst, 256 Fed. 670, 168 C. C. A. 64. What was invented usually depends in large part on what was left unrevealed to the skilled man by the prior art, and this is not inconsistent with interpreting patents "so as to uphold the right of the inventor" (Turrill v. Railroad, 68 U. S. [1 Wall.] 491, 17 L. Ed. 668), for the question is fundamental, What right has the inventor, under the circumstances?

The only field left to this inventor is just what he described in his specification—a means for depositing articles lifted from one depression, in another and succeeding depression of a cooling bed, without rolling, tumbling, or jostling. This defendant does not attempt nor accomplish. The difference in the means of the two parties is very small; but plaintiff's field of invention was also of the smallest.

Decree reversed, with costs, and cause remanded, with directions to dismiss the bill for noninfringement, also with costs.